******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., with whom ZARELLA and ROB-INSON, Js., join, dissenting. Under the facts of this case, the Workers' Compensation Commissioner for the Third District properly concluded that the plaintiff, Peter Balloli, did not meet his burden to prove "that the . . . injury arose out of and in the course of his employment as he was injured at home prior to commencing his normal commute to work. He had not departed from his 'place of abode' pursuant to General Statutes § 31-275 (1) (A) (i) at the time he sustained his back injury and therefore this incident is not compensable." I would affirm the decision of the Workers' Compensation Review Board affirming the commissioner's decision.

It is important to recognize that § 31-275 (1) (A) (i) carves out an exception to the general rule as to when an injury occurs " 'in the course of . . . employment,' " one of the prerequisites to compensability. See General Statutes § 31-275 (1). Normally, "[i]n order to establish that his injury occurred in the course of employment, the claimant has the burden of proving that the accident giving rise to the injury took place (a) within the period of the employment; (b) at a place [he] may reasonably [have been]; and (c) while [he was] reasonably fulfilling the duties of the employment or doing something incidental to it. . . . These three parts of the required proof of the in the course of employment test correspond, respectively, to the time, place and circumstances of the accident." (Citations omitted; internal quotation marks omitted.) *Mazzone* v. *Connecticut Transit Co.*, 240 Conn. 788, 793, 694 A.2d 1230 (1997).

Under the general rule, "[a]n injury sustained on a public highway while going to or from work is ordinarily not compensable. A principal reason for this rule is that employment ordinarily does not commence until the claimant has reached the employer's premises, and consequently an injury sustained prior to that time would ordinarily not occur in the course of the employment so as to be compensable. . . . There are a number of exceptions to the ordinary rule, four of which are . . . (1) If the work requires the employee to travel on the highways; (2) where the employer contracts to furnish or does furnish transportation to and from work; (3) where, by the terms of his employment, the employee is subject to emergency calls and (4) where the employee is injured while using the highway in doing something incidental to his regular employment, for the joint benefit of himself and his employer, with the knowledge and approval of the employer." (Citations omitted.) *Dombach* v. *Olkon Corp.*, 163 Conn. 216, 222, 302 A.2d 270 (1972); accord *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 274 Conn. 219, 228–29, 875

A.2d 485 (2005).

Originally, police officers, like all other employees, were subject to this " 'coming and going' rule." *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, supra, 274 Conn. 228. Thus, an injury sustained by a police officer while driving directly from his home to the police station to report to work at his usual time and place was deemed not to arise out of and in the course of employment, in the absence of evidence establishing one of the recognized exceptions available to all employees. See *McKiernan* v. *New Haven*, 151 Conn. 496, 498–501, 199 A.2d 695 (1964); cf. *Lake* v. *Bridgeport*, 102 Conn. 337, 341, 345, 128 A. 782 (1925) (injury deemed compensable when officer was injured while in transit to police station because he had been assigned to special police duty at theater and was ordered to report at police precinct nearest thereto before going on duty; "claimant was acting in obedience to the orders of a superior having jurisdiction to control his movements at the time of his injury").

The enactment in 1969 of what is now § 31-275 (1) (A) (i) effectively exempted police officers and firefighters from having to prove that their commute satisfied an exception to the coming and going rule. It provides that "[f]or a police officer or firefighter, 'in the course of his employment' encompasses such individual's *departure from* the individual's place of abode *to duty*, such individual's duty, and *the return to* such individual's place of abode *after duty* . . . ." (Emphasis added.) General Statutes § 31-275 (1) (A) (i).

The legislature did not define "place of abode" for purposes of § 31-275 (1) (A) (i).[1] Nonetheless, for purposes of this appeal, I agree with the majority and the parties that it is appropriate to look to the definitions relating to this term set forth in § 31-275 (1) (F) and § 31-275-1 of the Regulations of Connecticut State Agencies. The statute provides in relevant part that " 'place of abode' includes the inside of the residential structure, the garage, the common hallways, stairways, driveways, walkways and the yard . . . ." General Statutes § 31-275 (1) (F). The regulation similarly provides in relevant part that " 'place of abode' includes, but is not limited to: (a) House, condominium, or apartment; (b) Inside of residential structures; (c) Garages; (d) Common hallways; (e) Stairways; (f) Driveways; (g) Walkways, or (h) Yards." Regs., Conn. State Agencies § 31-275-1 (2).

Notably, these definitions are not limited to the actual residential area but also include places where the employee would store a vehicle used to commute to work, i.e., a garage or a driveway. Although one's place of abode may have a more limited scope in other contexts, such as those identified by the majority, it is logical and necessary for this term to extend to locations where the employee's vehicle is stored for purposes of § 31-275 (1). Section 31-275 (1) (A) (i) is

directed at covering certain employees' commutes to work, which most often occur through the employees' use of their own vehicles. In addition, the statutory definition of place of abode also applies to § 31-275 (1) (E), which sets forth the rule deeming preliminary acts or acts in preparation for work performed at the employee's place of abode to be generally noncompensable. See footnote 1 of this dissenting opinion. The examples of such acts indicate that clearing obstacles inhibiting egress from where the vehicle is stored would fall under the scope of this rule.[2] See Regs., Conn. State Agencies § 31-275-1 (1) (e).

Several other factors demonstrate that place of abode should be given a sufficiently flexible meaning to encompass the circumstances of the present case. As the majority concedes, the enumerated locations in the definitions are not an exhaustive list. See General Statutes § 31-275 (1) (F) ("'place of abode' *includes*" [emphasis added]); Regs., Conn. State Agencies § 31-275-1 (2) ("'[e]mployee's place of abode' *includes, but is not limited to*" [emphasis added]). In filling this gap, we should be mindful of "principles of statutory construction [that] require us to construe a statute in a manner that will not thwart [the legislature's] intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. . . . If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable." (Internal quotation marks omitted.) *Badolato* v. *New Britain*, 250 Conn. 753, 757, 738 A.2d 618 (1999); accord *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 319–20, 702 A.2d 1180 (1997).

Therefore, the commissioner properly would consider the purpose of § 31-275 (1) (A) (i), which is simply to ensure that an injury occurring during a police officer's or firefighter's commute would be deemed to arise in the course of employment. The commissioner's inquiry under § 31-375 (1) (A) (i) would not myopically focus on the location where the injury occurred but that location in connection with other facts, namely, whether the injury occurred during "[the] individual's *departure from* [the] individual's place of abode *to duty* . . . ." This contextual inquiry mirrors the three parts of proof relevant to whether an injury occurs in the course of employment: "time, place and circumstances of the accident." (Internal quotation marks omitted.) *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 793.

Such a contextual approach is necessary to reach sensible results. The definitions of place of abode are not limited in application to § 31-275 (1) (A) (i) but also to other provisions applicable to all employees. See footnote 1 of this dissenting opinion. Employees'

arrangements for their place of residence and for their storage of vehicles vary widely. For example, an employee may rent a room in someone else's house, temporarily stay with friends or relatives, live in a shelter or group housing, or live on a college campus. An employee may store his vehicle in his own garage or driveway, in a garage or lot in a common interest community, in an unassigned parking space in an apartment complex, in his neighbor's garage or driveway, or in other locations. Although the majority's determination that an employee's place of abode terminates at the employee's own property line has the superficial appeal of a bright line rule, that line is unmoored to the realities of employees' varied circumstances.[3] The scope of § 31-275 (1) (A) (i) must be read expansively enough to accommodate such circumstances to the extent as is consistent with the purpose of the coming and going exception. The paramount question is whether the employee's commute has commenced. That question is dependent upon the facts and circumstances of each case.

The aforementioned factors demonstrate that, under the circumstances of the present case as recited in the majority opinion, the commissioner properly concluded that the plaintiff had not departed from his place of abode to duty when he bent down by his vehicle to retrieve his dropped keys, thereby injuring his back. In making her determination, the commissioner adopted a construction of the statute that affords logical, consistent treatment of claims without regard to inconsequential differences in factual circumstances. Under the commissioner's construction, the happenstance of the plaintiff moving his vehicle out of his driveway to accommodate his son's departure was immaterial. The plaintiff's place of abode extended to the street where his vehicle was parked. Such a construction sensibly treats employees similarly irrespective of where they park their vehicles—in their driveways, on the street, or in a garage across the street. Similarly, the commissioner's construction would render immaterial the happenstance of whether the plaintiff had parked with the driver's side of his vehicle facing the street or in the opposite direction abutting his yard.

The commissioner's conclusion also took into account the fact that the plaintiff had not entered his vehicle or even opened the vehicle's door when he sustained his injury. As such, the commissioner reasonably concluded that the plaintiff's commute had not begun when he sustained his back injury, irrespective of whether his vehicle had remained in his driveway or was moved to the street in front of his house. At the evidentiary hearing, the following exchange occurred during the cross-examination of the plaintiff by the defendant's counsel:

"Q. And you had not departed your house at the time

that this incident had occurred, is that correct?

"A. When I felt the pain in my back?

"Q. Right?

"A. Right, I had not left yet."

The commissioner found that the plaintiff "acknowledged that at the time he felt the pain in his back he had not departed from his home." The plaintiff did not file a motion to correct that finding.[4]

As such, the commissioner's construction also is reasonable because it is consistent with the purpose of § 31-275 (1) (A) (i), to exempt police officers' commutes from the coming and going rule. The commissioner reasonably took this purpose into account when she concluded that the plaintiff's departure to duty had not yet commenced. Accordingly, I would affirm the Workers' Compensation Review Board's decision affirming the commissioner's decision concluding that the plaintiff's back injury is not compensable because it did not occur in the course of employment.

I respectfully dissent.

[1] A plethora of evidence demonstrates that both the statutory and regulatory definitions relating to place of abode are intentionally limited in their application to subparagraph (E) of § 31-275 (1), which, as I explain herein, is an unrelated provision that applies to all employees. Subparagraphs (A) through (E) of § 31-275 (1) prescribe the circumstances under which an injury is compensable. Subparagraph (F) defines terms used in two of those subparagraphs, one of which provides in relevant part: "For purposes of subparagraph (E) of this subdivision, 'place of abode' includes . . . ." General Statutes § 31-275 (1) (F). Subparagraph (A) was in effect at the time the legislature added subparagraphs (E) and (F), but we note that the legislature declined to provide that the definition in § 31-275 (1) (F) applied "[f]or purposes of subparagraphs (A) and (E) . . . ." With respect to the regulation, the legislature directed the Workers' Compensation Commission to adopt regulations implementing the provisions of § 31-275 at the same time it amended the statute to add subparagraphs (E) and (F). See Public Acts 1995, No. 95-262, §§ 2, 3. The following year, the commission adopted the regulation defining an " '[e]mployee's place of abode' . . . ." Regs., Conn. State Agencies § 31-275-1 (2). Notably, only subparagraph (E) of the statute uses the regulation's term "[e]*mployee's* place of abode," whereas subparagraph (A) (i) refers to an "*individual's* place of abode . . . ." (Emphasis added.) Compare General Statutes § 31-275 (1) (E) with General Statutes § 31-275 (1) (A) (i). Although an employee is an individual, the use of the different terms appear to be intentional, as the commission could have simply defined "place of abode" to cover both subparagraphs.

Subparagraph (E) addresses a matter that is not implicated in the present case, namely, the limited circumstances under which an employee's injury sustained during a preliminary act in preparation for work at his place of abode (i.e., grooming, clearing obstacles blocking the vehicle) is deemed to occur in the course of employment. See General Statutes § 31-275 (1) (E) ("[a] personal injury shall not be deemed to arise out of the employment if the injury is sustained: [i] At the employee's place of abode, and [ii] while the employee is engaged in a preliminary act or acts in preparation for work unless such act or acts are undertaken at the express direction or request of the employer"). Nonetheless, even if the statutory and regulatory definitions were not intended to control § 31-275 (1) (A) (i), it would be reasonable to construe this provision consistent with those definitions. See *State* v. *Pommer*, 110 Conn. App. 608, 616, 955 A.2d 637 ("[t]he rule of construction that words in a statute must be construed according to their plain and ordinary meaning [is informed by] the doctrine of [in pari] materia, under which statutes relating to the same subject matter may be looked to for guidance in reaching an understanding of the meaning of a statutory term" [internal quotation marks omitted]), cert. denied, 289 Conn. 951, 961 A.2d 418 (2008).

[2] Although the regulation defining such acts includes as examples the "[r]emoval of obstacles from one's *walkway, driveway or yard,* including but not limited to snow, ice, trash cans, recycling containers, or stones, in order to facilitate entry from one's residence onto a public thoroughfare"; (emphasis added) Regs., Conn. State Agencies § 31-275-1 (1) (e); it is both logical and consistent with the nonexclusive list of examples that such acts would necessarily include removal of obstacles impairing entry onto a public thoroughfare from wherever the vehicle is parked.

[3] For similar reasons, dicta in an Appellate Court opinion suggesting that § 31-275 (1) (A) prescribes some sort of "demarcation line"; *Perun* v. *Danbury*, 143 Conn. App. 313, 317, 67 A.3d 1018 (2013); is flawed insofar as it is construed consistent with the majority's position in the present case.

[4] The scope of the general term " 'in the course of . . . employment' "; General Statutes § 31-275 (1); is not treated as an issue of statutory construction subject to plenary review, but as a question of fact subject to a deferential standard of review. See *Daubert* v. *Naugatuck*, 267 Conn. 583, 590, 840 A.2d 1152 (2004). The question of whether the exception to the coming and going rule in § 31-275 (1) (A) (i) has been satisfied typically is a mixed question of fact and law. See *Diluciano* v. *State Military Dept.*, 60 Conn. App. 707, 713, 760 A.2d 1019 (2000) (concluding that issue of whether, as " 'special policeman' " deriving his authority from General Statutes § 29-18, plaintiff is entitled to be considered " 'policeman' " for purposes of coverage under § 31-275 [1] [A] is not pure question of law, but mixed question of law and fact); see also *United Parcel Service, Inc.* v. *Administrator, Unemployment Compensation Act*, 209 Conn. 381, 386, 551 A.2d 724 (1988) (treating application of statutory criteria to facts as mixed question of fact and law). We apply plenary review to such mixed questions; see *Crews* v. *Crews*, 295 Conn. 153, 162, 989 A.2d 1060 (2010); *Friezo* v. *Friezo*, 281 Conn. 166, 180, 914 A.2d 533 (2007); but without disturbing unchallenged factual findings.

It would appear, however, that the commissioner's unchallenged finding in the present case that the plaintiff had not departed to duty would be a sufficient basis alone to affirm the decision. Nonetheless, neither the Workers' Compensation Review Board nor the defendant advanced this theory. Accordingly, I agree with the majority regarding the plenary standard of review.